89 A.3d 643

**Earl PATTON and Sharon Patton, h/w, Appellees**

v.

**WORTHINGTON ASSOCIATES, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 2013.

Decided March 26, 2014.

2 
 

Stephen Alan Serfass, Esq., Drinker, Biddle & Reath, LLP, Philadelphia, for A & E Construction, Inc., William A. Graham Co. t/a The Graham Company et al.

Kimberly A. Boyer–Cohen, Esq., John Jacob Hare, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Philadelphia, James H. Rohlfing, Esq., William J. Devlin, Jr. & Associates, Philadelphia, for Worthington Associates, Inc.

Thomas Edward Tyler, Esq., Davis, Parry & Tyler, P.C., Philadelphia, for Shoemaker Construction Co. and Insurance Federation of Pennsylvania, Inc.

John F. Cordisco, Esq., Carin Ann O'Donnell, Esq., Stark & Stark, P.C., Yardley, for Patton, Earl & Sharon, Appellee.

Henry Yampolsky, Esq., Galfand Berger, L.L.P., Philadelphia, for The Pennsylvania Association for Justice.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice SAYLOR.

The issue presented concerns whether Appellant is a statutory employer per the Workers' Compensation Act and, as such, enjoys immunity from civil liability for injuries sustained by Appellee Earl Patton.

 Pursuant to Section 302(b) of the Workers' Compensation Act,[1] 77 P.S. § 462, general contractors bear secondary liability for the payment of workers' compensation benefits to injured workers employed by their subcontractors. *See McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294–95, 153 A. 424, 426 (1930). In this sense, general contractors have been denominated "statutory employers" relative to workers' compensation liability, although they are not common-law employers of subcontractor employees. *Id.* at 292, 153 A. at 425. The Legislature's purpose in imposing this status upon general contractors was remedial, as it wished to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors. *See Qualp v. James Stewart Co.*, 266 Pa. 502, 509, 109 A. 780, 782 (1920).[2]

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1, 2501–2626) (the "WCA" or the "Act").

2. Section 302(b) is phrased in terms broader than the "classic" statutory employer scenario involving general contractors and employees of their subcontractors. *Peck v. Del. County Bd. of Prison Inspectors*, 572

■ Concomitant with the treatment of traditional employers, statutory employers under Section 302(b) enjoy a measure of immunity from liability in tort pertaining to work-related injuries for which they bear secondary liability under the Act. *See* 77 P.S. § 52 (embodying Section 203 of the Act); *see also* 77 P.S. § 481(a) (providing that liability of employers under the WCA serves as an exclusive remedy). This Court has previously determined that this immunity pertains by virtue of statutory-employer status alone, such that it is accorded even where the statutory employer has not been required to make any actual benefit payments. *See Fonner v. Shandon, Inc.*, 555 Pa. 370, 380, 724 A.2d 903, 907 (1999).[3]

The above would seem to be relatively straightforward. *Accord McDonald*, 302 Pa. at 292, 153 A. at 425 ("There is no difficulty in determining in most cases whether or not one is a statutory employer."). In the present case, nevertheless, the trial and intermediate courts determined that a general contractor was not a statutory employer relative to an employee of its subcontractor. Below, we consider the obvious tension between such rulings and this Court's longstanding jurisprudence maintaining that conventional subcontract scenarios serve as paradigm instances in which the statutory-employment concept applies. *See, e.g., McDonald*, 302 Pa. at 294–95, 153 A. at 426.

Appellant, Worthington Associates, Inc., was engaged as the general contractor for an addition to a Levittown church. Worthington, in turn, entered into a standard-form subcontract with Patton Construction, Inc., a Pennsylvania corporation of which Appellee Earl Patton is the sole shareholder and an employee, to perform carpentry.

On October 26, 2001, while working at the construction site, Mr. Patton fell and sustained injuries to his back. Subse-

Pa. 249, 255, 814 A.2d 185, 189 (2002) (plurality). It is beyond the scope of this opinion, however, to address this broader reach.

3. Statutory-employer status is also imposed per Section 302(a) of the Act, as recently addressed in *Six L's Packing Co. v. W.C.A.B. (Williamson)*, 615 Pa. 615, 44 A.3d 1148 (2012). It also is beyond the scope of this opinion to address the scope of liability or immunity associated with such status.

quently, the Pattons commenced a civil action against Worthington contending that the company failed to maintain safe conditions at the jobsite. Worthington moved for summary judgment on the basis that it was Mr. Patton's statutory employer and, accordingly, was immune from suit. After the motion was denied, a trial commenced, during which Worthington reasserted its claim to immunity in unsuccessful motions for a nonsuit and a directed verdict.

The trial court's substantive concern was with the principle that a general contractor is not a statutory employer relative to employees of an independent contractor. *See, e.g.*, N.T., Dec. 1, 2009, at 185–95, 258 (discussing *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642, 645 (Pa.Super.1997) ("A contractor cannot claim statutory employer immunity with respect to [employees of] an independent contractor.")). Reasoning that the issue in controversy before it was whether an injured employee of a subcontractor should be treated as an independent contractor or an employee of the general contractor, the court elected to submit the following interrogatory to the jury, over Worthington's objection: "Is Plaintiff, Earl Patton, an independent contractor or an employee with respect to Worthington Construction?" N.T., Dec. 2, 2009, at 80.

For clarity, we pause to observe that—given that Worthington contracted with Patton Construction, Inc., and not Mr. Patton in his personal capacity—Mr. Patton himself had no contract whatsoever with Worthington and, accordingly, could not in the first instance be denominated an "independent contractor" or even a contractor for purposes of Sections 203 or 302(b) of the Act. Moreover, Mr. Patton was most certainly not a common-law employee of Worthington's; rather, he was an employee of Patton Construction, Inc. Nevertheless, having set up an errant dichotomy for the jurors, the court proceeded to instruct them concerning the differences between independent contractors and employees at common law. In doing so, the trial court compounded the underlying conceptual difficulties it had engendered, because this Court has long held that, for the salient purposes under Sections 203 and 302(b) of the WCA, the term "independent contractor"

carries a narrower meaning than it does at common law. *See, e.g., McDonald,* 302 Pa. at 293, 153 A. at 426; *Qualp,* 266 Pa. at 507–09, 109 A. at 781–82.

The jury returned a verdict in favor of the Pattons in the amount of $1.5 million in the aggregate.[4] In answering the special interrogatory, the jury found that Mr. Patton was an independent contractor of Worthington.

Post-trial motions were denied, and Worthington lodged an appeal. A Superior Court panel affirmed in a divided opinion with the majority crediting and embellishing upon the trial court's approach. *See Patton v. Worthington Assocs., Inc.,* 43 A.3d 479, 483–89 (Pa.Super.2012).

Judge Bender dissented, relying on decisions of this Court confirming that traditional general contractor/subcontractor scenarios give rise to a statutory employment relationship per Section 302(b). *See id.* at 495–97 (Bender, J., dissenting). The dissenting opinion distinguished several of the cases relied upon by the majority and the trial court, since the general contractors in those matters had attempted to con-tractually evade their statutory responsibilities to injured em-ployees of their subcontractors through a declaration that the subcontractor was independent. *See, e.g., Lascio,* 704 A.2d at 645 (reflecting circumstances in which a subcontract specified: "The parties agree that persons hired by the SUBCONTRAC-TOR ... in the course of the performance of the Work shall not be deemed to be the employees of CONTRACTOR for any purposes whatsoever"). In such scenarios, the dissent high-lighted, the courts had essentially suggested that an estoppel theory may apply to foreclose immunity defenses to tort claims. *See Patton,* 43 A.3d at 496 (Bender, J., dissenting).

We allowed appeal to address the noted difficulties with the trial court's approach, perpetuated in the published opinion of the Superior Court. Our review is plenary.

In its brief, Worthington emphasizes that it maintained an ordinary contractor/subcontractor relationship with Patton

---

4. The jury also found that Mr. Patton was comparatively negligent and assigned twenty percent of the causal fault to him.

Construction, Inc. Thus, according to the company, the present circumstances represent a "classic statutory employer situation." Brief for Appellant at 14 (quoting *Peck*, 572 Pa. at 255, 814 A.2d at 189). It is Worthington's position that the trial and intermediate courts were able to evade the force of this conclusion only by inappositely overlaying common-law conventions onto the discrete statutory regime embodied in Sections 203 and 302(b) of the WCA. *Accord* Brief for *Amici* Shoemaker Constr. Co. and Ins. Fed. Of Pa., Inc., at vii ("[A] statutory employer is made one by the Workers Compensation Act, not by contract or by common law[.]").

Worthington reiterates that the employees of subcontractors typically are neither themselves independent contractors nor employees of general contractors. *See, e.g.*, Brief for Appellant at 25 ("The fundamental flaw in the question approved by the Superior Court majority is that it forces the jury to determine whether the plaintiff is an employee or independent contractor of *the general contractor* when the only accurate answer is that he is an employee *of the subcontractor*" (emphasis in original)).[5] Accordingly, the company contends that the incongruous dichotomy interposed by the trial and intermediate courts effectively nullifies the statutory employer concept. Worthington also cautions that the Superior Court's precedential opinion may have an adverse impact on injured workers, since it just as well may be relied upon by employers to avoid workers' compensation liability as it may be used by plaintiffs to overcome immunity defenses raised in tort cases.

Shoemaker Construction Co. and the Insurance Federation of Pennsylvania, Inc., have filed an *amici* brief elaborating upon the essential points made by Worthington. These *amici* also note that the immunity created by the Act has encountered criticism and been treated with circumspection by the judiciary. *See* Brief for *Amici* Shoemaker Constr. Co. and

---

**5.** Indeed, Worthington observes that if Mr. Patton had been an actual employee of Worthington's, the statutory employment concept would be irrelevant, since Worthington would bear workers' compensation liability and enjoy the immunity from tort liability available to a conventional employer. *See* Brief for Appellant at 25–26.

Ins. Fed. Of Pa., Inc., at 8–11. While *amici* express no difficulty with the proposition that statutes curtailing individual rights should be applied with care, they find the approach of the trial and intermediate courts here to be so "precipitous and poorly-reasoned" as to raise concerns about the competency of the judicial system. *Id.* at 11, 32. A separate group of *amici* including twenty-one contractors and subcontractors wrote to warn of the impact of "a tremendous amount of *new* legal liability [introduced by the Superior Court's *Patton* decision] into the construction industry in the absence of *any* indication from the Pennsylvania General Assembly that it intended to abrogate long-standing legal protections provided to general contractors for suits by employees of subcontractors." Brief for *Amici* at 3 (emphasis in original).

In response, the Pattons and their *amicus,* the Pennsylvania Association for Justice, rely largely upon the reasoning of the trial and intermediate courts. In addition, they contend that the present circumstances do not entail a "classic statutory employer situation," since "Mr. Patton was not only the injured employee of the subcontractor, but also the (independent) subcontractor as it related to Worthington." Brief for Appellees at 10; *accord* Brief for *Amicus* Pa. Ass'n for Justice at 10 (alluding to the uniqueness of the facts, since Mr. Patton was the principal of Patton Construction, Inc.). Furthermore, highlighting the opinion of a dissenting Justice in the *Fonner* decision, *amicus* criticizes the application of immunity in favor of statutory employers who are not required to pay workers' compensation benefits. According to *amicus,* "the only way to even the scales of justice, considering the inherent inequity of the statutory employer immunity," is to strictly construe the threshold requirements for attaining statutory employer status when considering immunity questions. *Id.* at 23–25.

Upon review, and for the reasons already indicated, we agree with Worthington and its *amici* that the approach of the trial court and the Superior Court majority is flawed. As explained above, a century ago, this Court established that, per the terms of Section 302(b), a conventional relationship between a general contractor maintaining control of a jobsite

and a subcontractor implicates the statutory employer concept relative to employees of the subcontractor working there. *See McDonald*, 302 Pa. at 293–97, 153 A. at 426–27; *Qualp*, 266 Pa. at 507, 109 A. at 781. Although the Court recognized that statutory employment does not extend to employees of "independent contractors," it has clarified that the use of this phrase for the relevant purposes in connection with Sections 203 and 302(b) is unique, as it pertains to contractors having a relationship with the owner which is not a derivative one and, accordingly, excludes conventional subcontractors. The following passage from the *Qualp* decision is illustrative:

> The . . . original contractor in control of the premises to perform the work it had engaged to do . . . is regarded by the Workmen's Compensation Law as the employer to those engaged on or about the work within the scope of the undertaking. . . . This relation of employer to those employed about the premises includes only those whose work is a part of that embraced within the terms of the [original contractor's] contract with the owner. *The work of a contractor, on the same premises, in furtherance of the owner's general plan, on the same structure or enterprise, performing under another and different contract with the owner is, as to the person under consideration, the work of an independent contractor under the law, and his employ[ees] or those under him must look to him for compensation.* Each is separate and distinct, operating within his own sphere, though engaged on the same general work.

*Id.* at 507, 109 A. at 781 (emphasis added); *accord McDonald,* 302 Pa. at 296, 153 A. at 427 (explaining that a contract is an independent one "[w]here *an owner* contracts with another for work on his premises in furtherance of his regular business" (emphasis added)).

*Qualp* then carefully distinguished this limited conception of an "independent contractor"—*i.e.,* one having a distinct and independent contract with the owner—from conventional subcontractor scenarios. In this regard, the Court explained that one entrusted by a general contractor with a portion of the work through an agreement "is a subcontractor because his

contract is subordinate to and under the principal contract, though in the business world he may be independent; but *as regards this transaction his contract is a dependent one,* wherein he agrees to do all or a part of that which another has agreed to do." *Id.* at 508, 109 A. at 781 (emphasis added); *accord McDonald,* 302 Pa. at 293, 153 A. at 426 (explaining that "[t]hough contractors are often referred to as general, original, principal, and independent, the sense here used indicates their relation to the work as dependent or independent").[6]

■ Based on the above, Worthington is correct that the trial and intermediate courts inappropriately layered common-law concepts onto a distinctive statutory regime. Per *Qualp* and *McDonald,* conventional subcontractors are dependent contractors, not independent ones, for purposes of Sections 203 and 302(b). For these purposes, their employees are not contractors at all, nor, at least in the absence of special circumstances, are they employees of the general contractor.[7]

■ Here, as a matter of law, Patton Construction, Inc., was a subcontractor and not an "independent contractor"

6. Since the decision in *Qualp,* both Sections 203 and 302(b) have been amended, but the operative language has remained materially the same, thus reinforcing that the opinion reflects the meaning intended by the Legislature. *See* 1 Pa.C.S. § 1922(4) (embodying the principle of statutory construction that "[w]hen a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language").

7. We note that the viability of *Qualp's* holding has been questioned as it concerns the applicability of Sections 203 and 302(b) to the employees of persons or entities which have no direct contractual relationship with putative statutory employers, *see Travaglia v. C.H. Schwertner & Son, Inc.,* 391 Pa.Super. 61, 69–70, 570 A.2d 513, 517–18 (1989), and to persons who are common-law independent contractors of a subcontractor, *see also Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir.1991). The passages from *Qualp* which are relevant here, however, concern the core class of statutory employers (*i.e.,* those who are general contractors in control of worksites who have entered into subcontracts with direct employers of persons injured in the performance of their duties at the jobsite). As to this class, the salient passages from *Qualp* were reaffirmed in *McDonald* and provide essential guidance here, as discussed above.

relative to Sections 203 and 302(b) of the Act, particularly since it is undisputed that the company's contract was with the general contractor (Worthington) and not the owner (Christ United Methodist Church).

In response to the argument of the Pattons and their *amicus* that Mr. Patton's status as the principal of Patton Construction, Inc., alters the above calculus, we disagree. Individuals elect to conduct their affairs using the corporate form for various reasons, including to insulate their personal assets from exposure to liability for the debts of the corporation. *See, e.g., Lumax Indus., Inc. v. Aultman,* 543 Pa. 38, 41–42, 669 A.2d 893, 895 (1995) (discussing the strong presumption in favor of maintaining the corporate form against efforts to penetrate it). Once these choices are made, such persons and entities are not free to blur the lines of the capacity in which they act as it may suit them, and the courts must take care to maintain the necessary distinctions. The WCA does not sanction an exception to the statutory employment concept for subcontractors' principal-employees, and nothing in the arguments persuades us that one should be fashioned judicially.

In any event, whether he acted in a personal or corporate capacity, Mr. Patton's relationship with the owner here was undeniably a derivative one, arising per a conventional subcontract with a general contractor (Worthington). Again, under longstanding precedent, neither Patton Construction, Inc., nor Mr. Patton was an "independent contractor" relative to Worthington for Section 203 or 302(b) purposes. *See McDonald,* 302 Pa. at 293, 153 A. at 426; *Qualp,* 266 Pa. at 508, 109 A. at 781.

We note that we are no more pleased to disturb a compensatory jury award than the intermediate court. In the present circumstances, however, the governing law should have been applied by the trial court at the summary judgment stage, before the case ever reached trial, and certainly our error-correcting court should have recognized and vindicated this

law on appeal. Since this did not happen, it has been left for us to do so at this late juncture, four years after trial.

Finally, in terms of the disagreement by the Pattons' *amicus* with the holding of *Fonner, Fonner* is a majority decision of this Court which has been controlling law on a matter of statutory construction for almost fifteen years. Thus, the argument that it reflects poor public policy is at this point best expressed to the Legislature. The courts cannot abide the sort of distortions which occurred here as a counterbalance to previous decisions with which some may disagree. Were we to do so, we would not quell the sorts of apprehensions about the competency of the justice system expressed by several of Worthington's *amici*. While we have no difficulty with the proposition that statutory-employer status should be assessed carefully when asserted as a defense to tort liability, *see Travaglia*, 391 Pa.Super. at 69–71, 570 A.2d at 517–18, we are unable to credit a finding that there were *material* facts in question when there were, in fact, none.

The order of the Superior Court is reversed, and the matter is remanded for any further actions as may be necessary to conclude it, consistent with this opinion.

Chief Justice CASTILLE and Justices EAKIN, BAER, TODD, McCAFFERY and STEVENS join the opinion.

Justice BAER also files a concurring opinion.

Justice BAER, concurring.

Given the clear and unambiguous language of the relevant provisions of the Workers' Compensation Act (Act), as consistently interpreted by decades of precedent from this Court, I am constrained to join the Majority Opinion in full. As has been written several times over the past thirty-five years, however, the mandatory nature of workers' compensation has rendered the statutory employer doctrine obsolete.[1] Never-

1. A lone, and extremely narrow exception to the statutory requirement that employers provide workers' compensation for their employees exists for employers that hold a religious objection to providing the benefits. 77 P.S. § 484. This provision permits applications to be filed

theless, it remains undisturbed within Pennsylvania's statutory scheme as an irrational relic of a bygone era. I respectfully urge our colleagues in the General Assembly to eliminate the doctrine, so that it no longer serves as blanket immunity for general contractors, thwarting a victim's right to recover from a tortfeasor, and an innocent subcontractor-employer's right to recoup workers' compensation payments through subrogation; while adversely impacting worker safety by eliminating the traditional consequences (money damages) when a general contractor's negligence harms a subcontractor's employee.

When the Workers' (then Workmen's) Compensation Act was first enacted by the General Assembly in 1915, employers were given the option to elect into the scheme of no fault limited liability contained within the Act, or to remain liable (with all available defenses) in common law for injuries sustained by their employees in the workplace. With that right of refusal came the statutory employer doctrine, which gave employees the ability to receive workers' compensation benefits from, in the most common scenarios, a general contractor when the injured worker's employer, the subcontractor, elected not to carry workers' compensation coverage. However, even general contractors could refuse to elect to provide coverage for a subcontractor's employees, so long as prominent notice was provided in the workplace, but, "[i]t soon became clear that only foolish contractors would reject the Act in this fashion, since acceptance of workers' compensation financial responsibility provided concomitant immunity to common law negligence claims, pursuant to Section 303 . . . ." Richard M. Jurewicz & Arthur L. Bugay, *The Statutory Employer Defense in Pennsylvania Third Party Actions*

with the Department of Labor and Industry for a waiver from workers' compensation coverage on the basis that the employer is

a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any public or private insurance which makes payments in the event of death, disability, old age or retirement or makes payments toward the cost of, or provides services for medical bills [ . . . ].
*Id.* § 484(a).

(*Plaintiff's Perspective*), 69 Pa. B.A.Q. 29, 30 (Jan. 1998). Indeed, as early as 1929, this Court recognized that electing to carry workers' compensation coverage was the norm, because by disavowing the Act, contractors lost the immunity provisions that came with it. *See Swartz v. Conradis*, 298 Pa. 343, 148 A. 529, 530 (1929).

In 1974, amendments to the Act removed the optional election element. The respective common law roles of the parties—injured employee versus negligent employer—were lost with the mandatory application of the Act. Yet, the statutory employer doctrine remained without any basis in policy or usefulness, continuing to harm employees of subcontractors by prohibiting them from suing a third party tortfeasor, and harming the subcontractors themselves by immunizing negligent general contractors from subrogation claims. As a former member of this Court cogently noted, "[i]n reality, application of [the 1974] amendments rarely, if ever, will result in the general contractor assuming responsibility for providing workers' compensation insurance because in the modern construction workplace, general contractors will rarely, if ever, award a contract absent the subcontractor showing proof of workers' compensation coverage." *Fonner v. Shandon*, 555 Pa. 370, 724 A.2d 903, 908 (1997) (Nigro, J., dissenting). Indeed, since 1974, the only way the statutory employer doctrine will operate to guarantee a workers' compensation payment to an injured worker is if (1) the subcontractor violates the law (unlikely as noted by Justice Nigro); or (2) the religious exemption to the Act applies, as referenced *supra* note 1. *See* 77 P.S. § 484. Thus, the statutory employer doctrine serves one purpose: to provide immunity to a general contractor in tort, notwithstanding that it may have been a third party tortfeasor.[2]

**2.** *Cf.* 77 P.S. § 481(b), which provides:

In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf

For my part, I would advocate to the General Assembly that it revise the statutory employer doctrine to mirror that of our sister state, New Jersey. There, the doctrine only operates where a subcontractor has violated the mandatory provisions of the New Jersey Act and failed to obtain workers' compensation insurance. N.J. Stat. Ann. § 34:15–79(a). Under these circumstances, the general contractor steps into the shoes of the subcontractor, paying the subcontractor's employee's workers' compensation, and then receiving immunity from common law tort damages, while further having the ability to assert a right of subrogation against the noncompliant subcontractor. *Id.* Otherwise, "[w]here the subcontractor takes out compensation insurance ... the general contractor is treated as a third party and is not granted immunity from a common law negligence suit by an employee of a subcontractor." *Wilson v. Faull*, 27 N.J. 105, 141 A.2d 768, 772 (1958). Notably, the subcontractor is then likewise given a right of subrogation, should the general contractor be found negligent at common law. *Id.;* N.J. Stat. Ann. § 34:15–40.

Adopting such a paradigm would achieve several of the purposes found in the Pennsylvania Workers' Compensation Act. First, it maintains the primary purpose of the Act: the prompt payment of certain, statutorily defined benefits to an injured worker, regardless of fault. Second, it perpetuates the concomitant *quid pro quo* of immunity to the paying employer, whether a subcontractor or general contractor, that is equally important to the operation of the Act. Third, it preserves the Section 481(b) third party cause of action for injured employees in essentially all circumstances, without punishing the employee for what amounts to nothing more than happenstance if the negligent third party happens to be a general contractor. *Cf. Frazier v. WCAB (Bayada Nurses,*

or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

*Inc.*), 616 Pa. 592, 52 A.3d 241 (2012) (noting the general availability of third party actions sounding in tort when an employee's work-related injury is caused by a negligent third party). In that same light, the subcontractor, more often than not, a small "mom and pop" business like Patton Construction, which did nothing wrong, would obtain a right of subrogation against the negligent general contractor, assigning blame where it belongs and reducing the small business's cost of workers' compensation insurance. Finally, it would help to ensure safety in the workplace, and hopefully lead to the prevention of tragic accidents due to someone's carelessness (as seen in the instant case), by incentivizing general contractors to adopt more rigorous safety regimes.