**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 14-4186, 14-4698

———————

MARIA GARLICK, As Administor of the Estate of
George B. Garlick, III and in Her Own Right,
                                        Appellant

v.

TRANS TECH LOGISTICS, INC.; QC ENERGY RESOURCES, INC.;
QC ENERGY RESOURCES, LLC; QC ENERGY RESOURCES NORTHWEST, LLC;
ANADARKO PETROLEUM, CORP; ANADARKO ENERGY SERVICES, CO.;
ANADARKO E & P COMPANY LP;
ANADARKO MARCELLUS MIDSTREAM, LLC

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 4:12-cv-01166)
District Judge: Hon. Matthew W. Brann

———————

Argued: December 8, 2015

———————

Before: FUENTES, SHWARTZ, and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Opinion Filed:  December 18, 2015)

———————

OPINION*

———————

————————————————————
   * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

David L. Kwass, Esq.  [ARGUED]
Saltz, Mongeluzzi, Barrett & Bendesky
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, PA 19103

*Counsel for Appellant*

Stephanie L. Hersperger, Esq.  [ARGUED]
James DeCinti, Esq.
John T. Pion, Esq.
Pion, Nerone, Girman, Winslow & Smith
240 North 3rd Street
Payne Shoemaker Building, 10th Floor
Harrisburg, PA 17101

*Counsel for Appellees*


PER CURIAM.


Maria Garlick appeals the District Court's order granting QC's[1] motion for summary judgment on the ground that QC was George Garlick's statutory employer and thus entitled to immunity under the Pennsylvania Worker's Compensation Act ("PWCA"), 77 P.S. § 1 et seq., and its order granting Anadarko's[2] motion for summary judgment on the ground that Anadarko was not negligent.  For the reasons set forth below, we will affirm in part and vacate in part.

I

---

[1] Appellees QC Energy Resources, Inc., QC Energy Resources, LLC, and QC Energy Resources Northwest, LLC are collectively referred to herein as QC.

[2] Appellees Anadarko Petroleum Corporation, Anadarko Energy Services Company, Anadarko E&P Company LP, and Anadarko Marcellus Midstream, LLC are collectively referred to herein as Anadarko.

George Garlick drove a water truck for Trans Tech Logistics ("TTL").[3]  TTL leased its vehicles and provided drivers to QC, which operated "a bulk tank truck network serving the chemical, bulk liquid, and energy markets." App. 155.  QC contracted TTL to haul water via baby bottle trucks, to and from natural gas fracking sites, operated by Anadarko, an oil and gas producer and one of QC's clients.[4]  Anadarko selected "safe and efficient" routes to its sites in collaboration with state and local authorities, App. 1489, and provided the drivers with written directions they were required to use to reach the various sites.  These written directions required drivers to count the miles on a truck's odometer to confirm the location of the turns the drivers needed to make along the route.  Nothing in the record shows any driver following these directions had difficulty arriving at Anadarko's sites until May 15, 2012.

On May 15, 2012, Garlick began a twelve-hour overnight shift, during which he was to deliver water to an Anadarko site in Clinton County, Pennsylvania identified as Tract 653 Pad C.  At 10:27 p.m., Garlick delivered water to Pad C.  He left Pad C at 11:13 p.m. and returned to the water facility at approximately 1:00 a.m. on May 16.  He remained there for about fifteen minutes.  Garlick was scheduled to return to Pad C, but never arrived.  At approximately 2:30 a.m., Garlick was killed when his water tanker ran off a steep mountain road, crashed into a guardrail approximately 2.5 miles past the turn off to Pad C, and rolled off the road down a "steep decline."  App. 1668.

---

[3] TTL was originally named as a defendant in Garlick's suit, but was dismissed because, as Garlick's employer, it provided workers' compensation benefits and is immune from suit.

[4] These trucks can hold 110 barrels of water and, when filled with water, weigh approximately 40,000 pounds.

Maria Garlick, Garlick's widow, sued QC and Anadarko for negligence. Each

defendant moved for summary judgment, and the District Court granted both motions.

Garlick appeals.

II[5]

This appeal requires us to address (A) whether QC was George Garlick's statutory

employer under Section 302(a) of the PWCA, 77 P.S. § 461, and, if so, whether QC was

entitled to immunity under Section 303 of the PWCA, 77 P.S. § 481(a); and (B) whether

Anadarko was negligent in connection with the route it provided Garlick to follow to Pad

C.[6]

A

The PWCA requires employers to provide benefits to employees who suffer work-

related injuries. In exchange for "bear[ing] the cost of these benefits[,] . . . the PWCA

protects [employers] from other tort liability for work-related accidents." Rolick v.

Collins Pine Co., 925 F.2d 661, 663 (3d Cir. 1991) (citing 77 P.S. § 481(a)). As a result,

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's decision on summary judgment, which involved the interpretation and application of Pennsylvania law, de novo. Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008); Rolick v. Collins Pine Co., 925 F.2d 661, 663 (3d Cir. 1991). Summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-movant. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

[6] Because the Pennsylvania courts refer to Sections 302(a) and (b) by their PWCA citations, and Section 303 by its Pennsylvania code citation, Section 481(a), we will use that nomenclature in this opinion. See, e.g., Patton v. Worthington Assocs., Inc., 89 A.3d 643, 649-50 (Pa. 2014).

the only remedy an employee may pursue against his employer for a work-related injury is workers' compensation. This, in effect, immunizes an employer from lawsuits based upon an employee's work-related injury. This exclusive remedy and "concomitant immunity from suit by [the] injured employee," Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.), 781 A.2d 1146, 1153 (Pa. 2001), is set forth in PWCA Section 481(a), which provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes [sic], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.[7]

77 P.S. § 481(a). Only persons or entities classified as employers under the PWCA are cloaked with these protections. PWCA employers include contractual and common-law employers, as well as two categories of "statutory employers" set forth in PWCA Section 302. 77 P.S. §§ 461, 462; see McDonald v. Levinson Steel Co., 153 A. 424, 425 (Pa. 1930) ("A statutory employer is a master who is not a contractual or common-law one, but is made one by the Act.").

One of those categories, described in Section 302(a),[8] deems a general contractor the employer of its subcontractor's employees and makes the general contractor

---

[7] These sections describe injuries that arise in the course of employment. See 77 P.S. §§ 411, 27.1.

[8] Section 302(a) provides, in relevant part:

> A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes [sic] of the subcontractor unless the subcontractor primarily liable for the payment of

responsible for paying workers' compensation benefits if the subcontractor fails to provide them. Put differently, Section 302(a) covers, as statutory employers, "persons (including entities) contracting with others to perform work which is a regular or recurrent part of their businesses to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payment upon a default." Six L's Packing Co. v. Workers' Comp. Appeal Bd. (Williamson), 44 A.3d 1148, 1158-59 (Pa. 2012) (tomato grower who contracted with trucking company to transport tomatoes to the processing facility was a statutory employer and therefore liable for paying workers' compensation benefits to trucking company's employee who was injured on the job, where trucking company had no workers' compensation insurance).

Here, QC qualifies as a statutory employer.[9] Transporting bulk liquids was a regular and recurrent part of QC's business as a bulk tank truck network operator, and

---

such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.

For purposes of this subsection, a person who contracts with another . . . to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor.

77 P.S. § 461.

[9] Garlick argues that because the contract between QC and TTL designates TTL as an independent contractor, QC cannot be a statutory employer. Appellant's Br. 29. We reject this argument because, regardless of the contractual relationship between QC and TTL, our inquiry is limited to whether the relationship between QC and TTL satisfies the

6

QC "contractual[ly] delegate[d] . . . aspects of" its transportation business to TTL. Six L's, 44 A.3d at 1158. Accordingly, QC, as the contractor, was a statutory employer pursuant to Section 302(a) who assumed secondary liability to pay workers' compensation benefits to employees of its subcontractor, TTL, should TTL default on its obligations.

As Garlick's statutory employer, QC is immune from suit. Section 481(a) provides immunity for anyone who is "an employer under this act." 77 P.S. § 481(a). Nothing in the PWCA limits Section 481(a) immunity to common-law and contractual employers who fall within the statute's ambit. Like common-law and contractual employers, statutory employers are liable to provide workers' compensation benefits, albeit only if the direct employer fails to do so. Nonetheless, the immunity provided in Section 481(a) is the quid pro quo for a statutory employer's secondary liability under Section 302(a).[10] See Patton v. Worthington Assocs., Inc., 89 A.3d 643, 645 (Pa. 2014)

---

elements of statutory employer status under Section 302(a). See Six L's, 44 A.3d at 1152; see also Patton, 89 A.3d at 646-49 (explaining that in the statutory employer context, the relevant relationship is between general contractor and subcontractor, not between the subcontractor's employee and the general contractor).

[10] The Pennsylvania Supreme Court has explained that "[t]he Legislature's purpose in imposing [statutory employer] status upon general contractors was remedial, as it wished to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors." Patton, 89 A.3d at 645 (applying Section 302(b), which creates statutory employer status for accidents involving subcontractors' employees that occur on an employer's premises, in contrast to Section 302(a), which is not limited to on-premises accidents). Although Patton involved a Section 302(b) statutory employer, and the Pennsylvania Supreme Court has not yet been presented with the question of the scope of immunity for a Section 302(a) statutory employer, see id. at 645 n.3, we see no reason why, "[c]oncomitant with the treatment of traditional employers, statutory employers" under Section 302(a), like those under Section 302(b), do not "enjoy a measure of immunity from liability in tort pertaining to work-related

7

(describing Section 481(a) as "providing that liability of employers under the [P]WCA serves as an exclusive remedy"). This exchange of liability for immunity fulfills the purpose of the PWCA, which is to "provide security for injured workers," because it "prevent[s] certain general contractors from getting a free walk, if they did not require their subcontractors to carry compensation insurance." Six L's, 44 A.3d at 1154-55 (internal quotation marks omitted). We therefore conclude that, as a contractor exposed to secondary liability to pay workers' compensation benefits should its subcontractor default on its insurance obligations, QC is immune from suit.[11]

Garlick asks us to hold that a Section 302(a) statutory employer becomes immune only if it pays workers' compensation benefits to the subcontractor's injured employee upon the subcontractor's default. To so conclude would be contrary to the PWCA. The PWCA guarantees workers' compensation benefits arising out of the employment relationship either directly from an employer, or secondarily from a statutory employer in the event of the former's default. See 77 P.S. §§ 461, 462. The language of the statute

injuries for which they bear secondary liability under the Act," pursuant to Section 481(a). Id. at 645 (citing § 481(a)); see also id. at 651 (Baer, J., concurring) (explaining, albeit in a Section 302(b) case, that "the statutory employer doctrine serves one purpose: to provide immunity to a general contractor in tort, notwithstanding that it may have been a third party tortfeasor").

[11] Garlick points out that Section 302(b), the other statutory employer liability provision, has a corresponding "immunity" provision in Section 203, while Section 302(a) does not. See Six L's, 44 A.3d at 1152 (describing Section 203 as an immunity provision and Section 302(b) as a liability provision). The absence of an immunity provision designated for Section 302(a) has no bearing on our analysis, because Section 481(a) applies to any "employer under the act," which by its plain terms includes employers created by the PWCA. Moreover, Sections 302(a) and (b) are "separate and distinct," Six L's, 44 A.3d at 1158 n.11, and, according to the Pennsylvania Supreme Court, "Section 302(a) is best interpreted . . . according to its own terms." Id. at 1159 n.12.

conditions this secondary liability upon a failure of the direct employer to provide coverage. Thus, the PWCA puts in place a mechanism to ensure payment is made from a single employer source.

Maria Garlick received workers' compensation from George Garlick's employer, and therefore cannot sue QC, an entity that is also Garlick's employer under the PWCA, and whose liability served as a backstop to TTL's. Thus, the District Court properly granted QC's motion for summary judgment.

B

We next address Garlick's negligence claim against Anadarko. In her brief, Garlick argued that, by providing directions to drivers, Anadarko undertook to provide safe routes, and was negligent for failing to place adequate signage and lighting along the route.[12] At oral argument, however, both Garlick and Anadarko described the duty more broadly, namely that Anadarko had a duty to provide the safest available route. Oral Argument at 3:30, 6:00, 13:15, 21:25, 31:31, Garlick v. Trans Tech Logistics, Inc., et al., No. 14-4186, available at http://www2.ca3.uscourts.gov/oralargument/audio/14-4186Garlickv.TransTech.mp3.

To state a claim for negligence under Pennsylvania law, "a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff." Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 596 (Pa. 2012) (citation

---

[12] The Amended Complaint describes the duty similarly but even more narrowly. Specifically, it alleges that Anadarko determined and controlled the route Mr. Garlick drove and that it was negligent in failing to provide lights and signs along that route.

9

omitted).  As her legal source for a duty, Garlick relies on Restatement (Second) of Torts

§ 323, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) His failure to exercise such care increases the risk of such harm, or
> (b) The harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.  We have noted that § 323 is "particularly relevant .

. . where a party undertakes a task and possibly fosters reliance by the plaintiff on his

efforts."  Spence v. ESAB Grp, Inc., 623 F.3d 212, 217 (3d Cir. 2010) (citations,

quotation marks, and alterations omitted).

At oral argument, the parties said that Anadarko's duty arose from its undertaking

to provide the safest available route to the destination.  The record shows that Anadarko

undertook "to determine the most efficient and safest route into [its] facility" in

consultation with government stakeholders, such as the Commonwealth, local entities,

and/or the Department of Conservation and Natural Resources.  App. 1489.  It

memorialized these routes in written directions that told drivers specific roads to take and

the exact distance they would travel on each road.  In addition, the directions informed

the driver the mileage point at which he would need to make a turn.

This particular undertaking was done in the context of unique circumstances.

Drivers traversed forested, winding, mountainous roads at all hours of the day and night

to reach Anadarko sites.  The record reflects that drivers were required to follow the

directions Anadarko provided to reach the sites, and nothing in the record shows that

drivers could access the sites other than by following these directions.  A juror presented

with this evidence could therefore conclude that Garlick reasonably relied on Anadarko's

undertaking of providing these directions and, based upon the testimony of Anadarko's

representative, also conclude that they were devised to ensure safe passage.

Under the unique circumstances of this case, because Anadarko undertook a duty,

by its own admission, to provide the safest available route to the site, it is for the jury to

determine whether that duty was breached by providing only mileage measurements and

failing to provide lights and signs at the turn-off that Garlick missed during his second

trip to the site that night,[13] and if so, whether that breach was a substantial factor in

---

[13] Pennsylvania case law suggests that state and local governments bear responsibility for maintenance and improvements of roads under their respective control, including the installation of signs and lights.  See, e.g., Starr v. Veneziano, 747 A.2d 867, 871-72 (Pa. 2000) (rejecting township's argument that "it had no duty to install a traffic control device . . . [and] it was powerless to erect a no-left-turn sign absent PennDOT's approval . . . and there is no guarantee that PennDOT would have granted such approval if asked," and holding "that a municipality's responsibility to maintain its roadways free of dangerous conditions could include a duty to install an appropriate traffic control device where to do so would alleviate a known dangerous condition . . . ."); McCalla v. Mura, 649 A.2d 646, 649 (Pa. 1994); Swank v. Bensalem Twp., 472 A.2d 1065, 1066 (Pa. 1984) ("The exclusive authority and jurisdiction over all state designated highways rests with the Department of Transportation.") (citing 71 Pa. C.S. § 512(10)); see also Cruet v. Certain-Teed Corp., 639 A.2d 478, 482 (Pa. Super. Ct. 1994) (commercial property owner had no duty to warn motorists on an abutting public highway that vehicles might be entering the highway from the private property); Allen v. Mellinger, 625 A.2d 1326, 1329 (Pa. Commw. Ct. 1993) (applying Restatement (Second) of Torts § 349 to hold that defendants, "as abutting landowners, owed no duty to [plaintiff], which could be breached, to maintain a public highway in a safe condition").  The record shows that government entities played a role in devising the directions, and there is no evidence they recommended that lights or signs be posted along the routes.

causing Garlick's death.  Thus, we will vacate the District Court's order granting Anadarko's motion for summary judgment.

III

For the foregoing reasons, we will affirm the District Court's order granting QC's motion for summary judgment, vacate its order granting Anadarko's motion for summary judgment, and remand to the District Court for proceedings consistent with the foregoing opinion.