J-A03017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD AND JILL OSTER, H/W | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SERFASS CONSTRUCTION COMPANY, | : | No. 1052 EDA 2021 |
| INC., AND CITY CENTER | : | |
| INVESTMENT CORPORATION | : | |
| | : | |
| RONALD AND JILL OSTER, H/W | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TOWER SIX OP, LP | | |

Appeal from the Order Entered May 4, 2021
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2018-C-2235,
2018-C-3087

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

CONCURRING/DISSENTING MEMORANDUM BY McCAFFERY, J.:

**FILED AUGUST 17, 2022**

Because I conclude the record contains a genuine issue of material fact as to whether Tower had superior knowledge of the dangerous condition which led to Mr. Oster's injury, I would vacate the order granting Tower summary judgment and remand the case for trial.  However, I am constrained to concur with the Majority's decision to affirm the trial court's grant of summary

judgment in favor of Serfass. Although I strongly disagree with the manner in which the statutory employer doctrine has been wielded by negligent general contractors to shield themselves from civil liability when they have not taken any steps to ensure the employees of their subcontractors will be adequately compensated (or even insured) for on-the-job injuries they sustain as a result of that negligence, I acknowledge we are bound by existing, controlling statutory and case law to the contrary. Thus, I respectfully dissent in part and concur in part from the Majority's memorandum decision.

## I. Summary Judgment in favor of Tower

With regard to Tower's liability, or lack thereof, the Majority concludes the record "supports the trial court's determination" that Appellants failed to identify any "evidence of record" that Tower possessed "superior knowledge" that the condition of the Trifecta Building posed a danger to Mr. Oster, and thus, the court's entry of summary judgment in favor of Tower was proper. **See** Majority's Memorandum at 8. However, I find the Majority's application of the law to be too limited.

Generally, "a landowner who engages an independent contractor is not responsible for the acts or omission of such independent contractor or his employees." **Beil v. Telesis Const., Inc.**, 11 A.3d 456, 466 (Pa. 2011) (citations omitted). Nevertheless, there are several exceptions to this general rule. **See id.** One such exception applies when the landowner possesses "superior knowledge" of a potentially dangerous condition. **See Gutteridge v. A.P. Green Servs., Inc.**, 804 A.2d 643, 657-58 (Pa. Super. 2002).

> **A landowner owes a duty to warn an unknowing independent contractor of existing dangerous conditions on the landowner's premises where such conditions are known or discoverable to the owner.** Such a duty to warn is owed irrespective of whether the independent contractor exercises full control over the work and premises entrusted to him. However, [a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor. It has also been said that the employer of an independent contractor has no duty to warn the contractor or his employees of a condition that is at least as obvious to them as it is to him. In addition, the owner of property is under no duty to protect the employees of an independent contractor from risks arising from or intimately connected with defects or hazards which the contractor has undertaken to repair or which are created by the job contracted.

*Colloi v. Philadelphia Elec. Co.*, 481 A.2d 616, 619–20 (Pa. Super. 1984) (citations & quotation marks omitted; emphasis added & some emphasis removed). Thus, a landowner owes a duty of care to protect the employee of an independent contractor from potential dangers that are known or "discoverable" to the landowner, and not as obvious to the employee.

In the present case, it is undisputed that the employee, **Mr. Oster**, had **no knowledge** the Trifecta Building was struck by an excavator bucket a few weeks before his first day at the jobsite, or that the incident may have affected the structural integrity of the chimney located directly above the area where he was assigned to work. The relevant question is whether the potentially dangerous condition was "known **or discoverable to**" the landowner, Tower. *See Colloi*, 481 A.2d at 619 (emphasis added). As this Court explained in *Gutteridge*:

- 3 -

> The question of whether a landowner owes a duty to warn an independent contractor of dangerous conditions on the premises turns on whether the owner possesses "superior knowledge" or information which **places him in a better position to appreciate the risk posed to the contractor or his employees** by the dangerous conditions.

***Gutteridge***, 804 A.2d at 657–58 (emphasis added).

In my view, the fact that those in charge of the jobsite **retained an engineer**, less than 10 days before the accident, to conduct a **structural assessment** of the building on which Mr. Oster was working when he was injured, raises a jury question as to whether Tower had "superior knowledge" of the potential danger or whether such knowledge was discoverable to Tower.

In granting summary judgment to Tower, the trial court first emphasized that the engineering report was addressed to Serfass, and there was "no indication that Tower . . . solicited the . . . Report or received a copy of the . . . . Report." Trial Ct. Op. (No. 2018-C-3087), 5/4/21, at 8. I find it implausible that the landowner, who contracted with Serfass to perform the demolition work, would not have been informed of the potentially dangerous condition resulting from an excavator bucket striking the connecting building, and, indeed, would not have received a copy of the engineering report. Nevertheless, even if Tower can establish it did not request or receive the Report, it is still liable to Appellants if a jury determines the dangerous condition was "discoverable to" Tower, and that Tower was in a better position to appreciate the risk than Mr. Oster. I conclude that these two critical questions are for the jury to decide.

- 4 -

Second, both the Majority and the trial court maintained that Appellants presented no evidence Tower "had any knowledge that the excavator's impact with the Trifecta Building caused the chimney to pose a danger to workers at the Tower Project site" — primarily because the engineering report "concluded that the Trifecta Building was unaffected by the excavator impact." Majority Memo at 8; *see also* Trial Ct. Op. at 8-9. Again, I would conclude the Majority and the trial court made a factual determination which should have been left for the jury.

First, I emphasize that the excavator incident was alarming enough to those in charge of the jobsite that they requested a **structural assessment** by an engineer. Moreover, as Appellants pointed out in their brief, the report provided an assessment of **only** the exterior wall of the Trifecta Building and made no mention of the chimney that later collapsed. *See* Appellants' Brief at 33. Although the trial court found this argument misleading — noting that the report spoke "directly to the area of the Trifecta Building previously struck by the excavator bucket"[1] — I cannot agree. It is unclear from the record whether the engineer did, in fact, assess the condition of the chimney, and the determination of whether Tower should have conducted a more thorough assessment or taken steps to protect the subcontractors are, again, questions for the fact finder.

_____

[1] Trial Ct. Op. at 9.

Viewing the record in the light most favorable to Appellants — the nonmoving parties — I conclude that the record does not clearly demonstrate Tower is entitled to judgment as a matter of law, and, in fact, there exists a genuine issue of material fact as to whether Tower either had superior knowledge of the potential danger to Mr. Oster, or that such knowledge was discoverable to it, and not apparent to Mr. Oster. *See Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013). Thus, I dissent from the Majority's decision to affirm the order granting summary judgment to Tower.

## II.     Summary judgment in favor of Serfass

The Majority also affirms the order of the trial court granting summary judgment to Serfass concluding that, pursuant to the five-part test outlined in *McDonald v. Levinson Steel Co.*, 153 A. 424 (Pa. 1930), Serfass was Mr. Oster's "statutory employer" and, thus, is entitled to immunity from civil liability under Section 302(b) of the Workers' Compensation Act. *See* Majority Memorandum at 8-12. Reluctantly, I acknowledge the five-part *McDonald* test remains the standard by which the courts of this Commonwealth determine whether a general contractor is the statutory employer of the employee of a subcontractor, and consequently, immune from civil liability. Moreover, I concur that upon application of the *McDonald* test, the trial court properly determined Serfass was Mr. Oster's statutory employer in the present case, and, thus, immune from liability.

Nevertheless, I am compelled to express my opinion that statutory employer doctrine, as applied *via* the *McDonald* test, is "an irrational relic of

a bygone era." ***Patton v. Worthington***, 89 A.3d 643, 651 (Pa. 2014) (Baer, J., concurring). "The Legislature's purpose in imposing this status upon general contractors was remedial, as it wished to **ensure payment of workers' compensation benefits** in the event of defaults by primarily liable subcontractors." ***Id.*** at 645 (emphasis added; citations omitted). ***See Peck v. Delaware Cnty. Bd. of Prison Inspectors***, 814 A.2d 185, 188 (Pa. 2002) (Per Newman, J., with two Justices concurring, and one Justice concurring with separate opinion) ("The purpose of this provision is clear: **to ensure the payment of compensation benefits** by a financially responsible party in the injured worker's chain of employment from subcontractor to general contractor.") (emphasis added); ***Dougherty v. Conduit & Found. Corp.***, 674 A.2d 262, 265 (Pa. Super. 1996) ("The intent behind the doctrine of statutory employer is 'to hold a general contractor secondarily liable for injuries to the employees of a subcontractor, **where the subcontractor primarily liable has failed to secure benefits** with insurance or self-insurance.'") (citation omitted; emphasis added).

When Section 302(b) was enacted in 1915, employers were **not required** to obtain Workers' Compensation insurance for their employees. Thus, if an employee of a subcontractor was injured on a jobsite, that employee was not guaranteed workers' compensation benefits if their employer failed to obtain the coverage. The statutory employer doctrine was enacted to address this potential lapse, and impose "secondary liability on statutory employers . . . to ensure that an injured worker will be afforded

payment of benefits, even in the event of default by his primary employer."

***Doman v. Atlas America, Inc.***, 150 A.3d 103, 109-10 (Pa. Super. 2016).

As this Court observed in ***Doman***,

> The tort immunity associated with the imposition of secondary liability reflects the historical *quid pro quo* between an employer and employee whereby the employer assumes liability without fault for a work-related injury . . . . However, **the Act was amended in 1974 to require that all employers provide workers' compensation coverage**. Notwithstanding, the 1974 amendments **allowed general contractors to remain insulated** from tort liability, despite never being required to provide workers' compensation benefits to injured employees of subcontractors, and created a windfall immunity shield. **Thus, "the mandatory nature of workers' compensation has rendered the statutory employer doctrine obsolete**[,] … [and] adversely impact[s] worker safety by eliminating the traditional consequences (money damages) when a general contractor's negligence harms a subcontractor's employee."

***Id.*** at 110 (citations & quotation marks omitted; emphases added).

Accordingly, the ***Doman*** Court called upon the Pennsylvania Legislature to "reconsider [this] statutory scheme." ***Id.*** at 109.

Heretofore, judicial criticism of the statutory employer doctrine has fallen on deaf ears. Justice Nigro authored a dissenting opinion in ***Fonner v. Shandon, Inc.***, 724 A.2d 903 (Pa. 1999), advocating for the addition of a sixth element to the ***McDonald*** test — proof that the general contractor "assumed responsibility for providing workers' compensation to the injured employee[.]" ***Fonner***, 724 A.2d at 908 (Nigro, J. dissenting). He explained:

> [The 1974 amendments for the Workers' Compensation Act made] its application . . . mandatory. The impetus of this change was to afford protection to employees. The Legislature never intended that the amendments would allow a general contractor to escape

civil liability if it did not pay for the injured employee's workers' compensation insurance. I find the clear meaning of the 1974 amendments was to place responsibility for workers' compensation benefits upon the general contractor **only where** the subcontractor or direct employer failed to do so. In reality, application of these amendments rarely, if ever, will result in the general contractor assuming responsibility for providing workers' compensation insurance because in the modern construction workplace, general contractors will rarely, if ever, award a contract absent the subcontractor showing proof of workers' compensation coverage. **Common sense and logic dictate that the general contractor should not reap the benefits of civil liability immunity unless it undertakes responsibility of compensation coverage.** If however, a general contractor does assume responsibility for the payment of workers' compensation, then it should be afforded statutory employer immunity.

\* \* \*

As Judge Hoffman stated more than thirty years ago,

. . . very great care . . . must be exercised before allowing an employer to avoid its liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, **should not be casually converted into a shield behind which negligent employers may seek refuge.**

*Id.* at 908-09 (some emphases added), *citing **Stipanovich v. Westinghouse Elec. Corp.**,* 231 A.2d 894, 898 (Pa. Super. 1967).

More recently, another Supreme Court Justice reiterated this same concern in a concurring opinion in ***Patton***. ***See Patton***, 89 A.3d at 650-51. Justice Baer advocated that the Pennsylvania Legislature

revise the statutory employer doctrine to mirror that of our sister state, New Jersey. There, the doctrine **only operates where a subcontractor has violated the mandatory provisions** of the New Jersey Act **and failed to obtain workers' compensation insurance.** Under these circumstances, the general contractor steps into the shoes of the subcontractor, paying the

subcontractor's employee's workers' compensation, and then receiving immunity from common law tort damages, while further having the ability to assert a right of subrogation against the noncompliant subcontractor. Otherwise, [w]here the subcontractor takes out compensation insurance . . . the general contractor is treated as a third party and is not granted immunity from a common law negligence suit by an employee of a subcontractor. Notably, the subcontractor is then likewise given a right of subrogation, should the general contractor be found negligent at common law.

*Id.* at 652 (Baer, J. concurring) (citations & quotation marks omitted). The Justice opined that "adopting such a paradigm would achieve" the primary purposes of the Act: (1) ensure "prompt payment" of benefits to an injured worker regardless of fault; and (2) "perpetuate[ ] the concomitant *quid pro quo* of immunity to the paying employer[.]" *Id.* Justice Baer anticipated that this approach would also "help to ensure safety in the workplace, and hopefully lead to the prevention of tragic accidents due to someone's carelessness . . ., by incentivizing general contractors to adopt more rigorous safety regimes." *Id.* *See also Doman*, 150 A.3d at 109 (Superior Court panel stating that it "echo[s] those calls" that the legislature "reconsider Pennsylvania's [workers' compensation] statutory scheme").

Therefore, like my honorable colleagues on the Supreme Court and the *Doman* panel, I advocate for a change in the workers' compensation law. In my opinion, as suggested by Justice Nigro, the *McDonald* test should require a sixth element — proof that the general contractor either paid the injured worker's benefits, or prior to the injury, obtained a policy which would have covered the injured employee. Only when a general contractor has assumed

responsibility for an injured worker's benefits should it be entitled to immunity under the Act. To do so would be in furtherance of the initial legislative intent which is to provide a failsafe for injured workers in the event of a lapse in workers' compensation insurance by the primary employer. Imposing such a requirement would also promote public policy considerations of assuring safe worksites and providing maximum protection and compensation to injured workers. However, because, as noted above, I concede we are bound by controlling statutory and case law to affirm the trial court's grant of summary judgment in favor of Serfass, I am constrained to concur in the Majority's decision.[2]

Thus, I concur with the decision to affirm the order granting summary judgment to Serfass, and dissent from the decision to affirm the order granting summary judgment to Tower.

---

[2] I note that unlike my colleagues in the Majority, I do not find Appellants waived this claim. **See** Majority Memorandum, at 12 n.5. Indeed, they discussed the "judicial calls to the Pennsylvania legislature to reconsider [this] statutory scheme" in their Memorandum of Law accompanying their response to Serfass' motion for summary judgment, and asserted that the "present statutory scheme allows general contractors to remain insulated from tort liability despite never being required to provide . . . benefits to injured employees of subcontractors, thus creating a windfall immunity shield." Appellants' Memorandum of Law in Opposition to [Serfass'] Motion for Summary Judgment, 11/19/20, at 12.