J-A26034-16

2016 PA Super 233

| THOMAS R. DOMAN, JR., AS ADMINISTRATOR OF THE ESTATE OF ROCK A. DOMAN, Deceased, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| ATLAS AMERICA, INC. (De.), ATLAS ENERGY RESOURCES, LLC, ATLAS RESOURCES, LLC, SUCCESSOR IN INTEREST TO ATLAS RESOURCES, INC., ATLAS AMERICA, LLC, SUCCESSOR IN INTEREST TO ATLAS AMERICA, INC. (Pa.) ATLAS ENERGY, INC., SUCCESSOR IN INTEREST TO ATLAS AMERICA, INC. (De.) AND ATLAS ENERGY RESOURCES, LLC, ATLAS ENERGY OPERATING COMPANY LLC AND ATLAS ENERGY FINANCE CORPORATION | : | No. 153 WDA 2016 |

Appeal from the Order December 30, 2015
in the Court of Common Pleas of Allegheny County,
Civil Division, No(s): GD-09-013573

BEFORE:  BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                    **FILED OCTOBER 27, 2016**

Thomas R. Doman, Jr. ("Thomas"), as administrator of the Estate of Rock A. Doman ("the Doman Estate"), deceased, appeals from the Order granting summary judgment in favor of Atlas America, Inc. (De.); Atlas Resources, LLC, successor in interest to Atlas Resources, Inc.; Atlas America, LLC, successor in interest to Atlas America, Inc. (Pa.); Atlas Energy, Inc., successor in interest to Atlas America, Inc. (De.), and Atlas

Energy Resources, LLC; Atlas Energy Operating Company, LLC; and Atlas Energy Finance Corporation (collectively, "Atlas").[1] We affirm.

In September 2006, Atlas entered into an oil and gas lease with Frieda Springer ("Springer"), for the purpose of drilling, operating, producing, and removing oil and gas from her property in Greene County. Atlas subsequently entered into a Drilling Bid Proposal and Footage Drilling Contract ("Footage Drilling Contract") with Gene D. Yost & Son, Inc. ("Yost"), a drilling contractor, to drill multiple wells in Fayette County and Greene County, including Well No. 13 on Springer's property ("the Springer Well").[2] Under the terms of the Footage Drilling Contract, Yost was required to provide the necessary equipment and labor, and to drill the wells to the contract footage depth, as specified by Atlas.

Yost began drilling at the Springer Well site in November 2007, and the well reached the contract footage depth on December 2, 2007. Yost personnel worked overnight to remove the drilling pipe from the Springer Well and "shut in" the well, leaving the gas in the well bore. The Tulsa

---

[1] Although the Doman Estate named each of the above-mentioned Atlas entities as defendants in the Amended Complaint, the parties agreed that the only proper defendant is Atlas Resources, LLC.

[2] The Springer Well is a shallow, low-pressure vertical well drilled into the Upper Devonian Shale formation. Such wells commonly involve footage contracts with well-drilling companies, whereby the oil and gas lessee pays the drilling company a per-foot rate to drill to a specified depth, referred to as the contract footage depth. When drilling is complete, the contracted drilling company is required to remove the drilling pipe, "shut in" the well, and remove the drilling equipment so the lessee can move into the production stage.

Valve, which is situated on top of the well head and is used to contain the gas within the well, was closed at this time. Rock A. Doman ("Doman") and another Yost employee began removing the blow-out preventer flange, which was attached to the Tulsa Valve, from beneath the rig platform. While the men unscrewed the flange from the Tulsa Valve assembly, they inadvertently loosened the pressurized piping below the Tulsa Valve. The Tulsa Valve and the blow-out preventer flange detached from the well head and struck Doman. Doman was thrown approximately 60 feet above ground level before landing about 30 to 40 feet from the well rig, and was fatally injured.

Yost paid workers' compensation benefits to Doman's fiancé, for the benefit of her minor child.[3]

The Doman Estate filed a Complaint on July 28, 2009 to initiate a wrongful death and survival action, seeking damages in tort for the beneficiaries of the Doman Estate, Thomas and Patti Doman (Doman's parents). The Doman Estate filed an Amended Complaint on November 25, 2009, asserting the following six counts: (I) negligence/premises liability; (II) negligence/negligent orders; (III) negligence/retention of control; (IV) negligence/direct liability/peculiar risk doctrine; (V) negligence/vicarious liability/peculiar risk doctrine; and (VI) strict liability/ultrahazardous activity.

---

[3] Although the child is not Doman's natural son, he received workers' compensation benefits as a dependent child under a theory of *in loco parentis*.

Atlas filed preliminary objections, seeking dismissal of each of the six counts. On May 27, 2010, the trial court dismissed Counts V and VI.

On May 8, 2015, after almost five years of discovery, Atlas filed a Motion for summary judgment on the remaining counts, alleging that Atlas is a statutory employer under Section 302(a) of the Workers' Compensation Act ("the Act"), codified at 77 P.S. § 461, and, therefore, is immune from tort liability. Following a hearing, the trial court granted summary judgment in favor of Atlas on December 30, 2015. The Doman Estate filed a timely Notice of Appeal.

On appeal, the Doman Estate raises the following question for our review: "Whether the [l]ower [c]ourt erred in finding that Atlas, the owner of the gas well where [] Doman, an employee of an independent contractor, was killed, was shielded from tort liability as a statutory employer and, thus, immune from civil liability under the [] Act[?]" Brief for Appellant at 4.[4]

Our standard of review of an order granting a motion for summary judgment is well-settled:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of

---

[4] The Doman Estate claims that the trial court erred by granting summary judgment in favor of Atlas, and finding that Atlas is immune from tort liability as a statutory employer under Section 302(a). The Doman Estate offers three separate sub-issues for our consideration, which we will consider together.

review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted).

First, the Doman Estate argues that the trial court failed to appropriately consider the Pennsylvania Supreme Court's decision in *McDonald v. Levinson Steel Co.*, 153 A. 424 (Pa. 1930).[5] Brief for Appellant at 9. The Doman Estate points to the *McDonald* decision for the proposition that property owners are not entitled to immunity as statutory employers. *Id.* at 10.

The Doman Estate next argues that the trial court applied the wrong test in determining that Atlas is immune from civil liability. *Id.* at 11. The Doman Estate claims that the trial court should have applied Section 203 of the Act rather than Sections 302(a) and 303 in determining whether Atlas is a statutory employer, and asserts that Section 302(a) cannot be applied in negligence actions. *Id.*

Additionally, the Doman Estate asserts that Section 302(a) cannot be used to confer immunity to Atlas because Atlas did not have a contract with

---

[5] In *McDonald*, the Supreme Court set forth the following five elements necessary to create the statutory employer relationship: "(1) an employer who is under contract with an owner or one in the position of an owner[;] (2) premises occupied by or under the control of such employer[;] (3) a subcontract made by such employer[;] (4) part of the employer's regular business [e]ntrusted to such subcontractor[;] [and] (5) an employee of such subcontractor." 153 A. at 426 (capitalization omitted).

an owner, and Atlas did not pay workers' compensation benefits. Brief for Appellant at 15. The Doman Estate claims that Yost should be considered an independent contractor rather than a subcontractor, and that Atlas should be considered a property owner rather than a general contractor or statutory employer. *Id.* at 16-17.

A contractor may be deemed a statutory employer if the requirements of either Section 302(a) or Section 302(b) have been satisfied. *See Emery v. Leavesly McCollum*, 725 A.2d 807, 813 (Pa. Super. 1999); *see also Gann v. Workmen's Comp. Appeal Bd.*, 792 A.2d 701, 704 (Pa. Cmwlth. 2002) (stating that "Sections 302(a) and 302(b) of the Act [] confer 'statutory employer' status on certain entities for workers' compensation purposes"). Section 302(a) of the Act provides as follows:

> **§ 461. Coverage of employees of subcontractor; subcontractor defined; exception.**
>
> A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.
>
> For purposes of this subsection, a person who contracts with another (1) to have work performed consisting of (i) *the removal, excavation or drilling of soil, rock or minerals*, or (ii) the cutting or removal of timber from lands, or (2) to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor.

This subsection shall not apply, however, to an owner or lessee of land principally used for agriculture who is not a covered employer under this act who contracts for the removal of timber from such land.

77 P.S. § 461 (emphasis added).

Section 302(b) of the Act provides as follows:

**§ 462. Coverage of laborer or assistant hired by employe or contractor; contractor defined.**

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.

77 P.S. § 462.[6]

Section 203 of the Act sets forth the rights enjoyed by a statutory employer.

---

[6] Section 105 of the Act states the following:

The term "contractor," as used in [Section 203] and [Section 302(b)], shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, but shall include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken.

77 P.S. § 25.

**§ 52. Employers' liability to employe of employe or contractor permitted to enter upon premises.**

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as his own employe.

77 P.S. § 52. The language of Section 203, which places the statutory employer in the same position as the direct employer, coupled with Section 303's mandate that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes," provides immunity from tort liability for statutory employers. 77 P.S. § 481(a); *see also Peck v. Delaware County Bd. of Prison Inspectors*, 814 A.2d 185, 188 (Pa. 2002) (stating that "[a]lthough not apparent from its express terms, the language from Section 203 … confers upon the statutory employer immunity from suit. This is because Section 303(a) … makes the workers' compensation system the exclusive remedy for an injured employee seeking redress from an employer for an on-the-job injury.").

Initially, a review of the relevant case law reveals

a degree of ambiguity inherent in the overall scheme for statutory employer liability, arising out of differences in the definitions for "contractor" as used in various provisions of the [Act;] the idiosyncratic conception of subcontracting fashioned in Section 302(a); the substantial overlap between Sections 302(a) and (b); and the apparent differences in the depiction of the concept of statutory employment as between the Act's liability and immunity provisions.

***Six L's Packing Co. v. Workmen's Comp. Appeal Bd.***, 44 A.3d 1148, 1158 (Pa. 2012). Indeed, there are two significant differences between Section 302(a) and Section 302(b). Unlike Section 302(b) and Section 203, on its face, Section 302(a) does not require the primary contractor to occupy or control a worksite in order to be deemed the statutory employer of the subcontractor's employees. ***See*** 77 P.S. § 461. Additionally, Section 302(a) sets forth a specialized definition of contractor, which, relevantly to this case, includes "a person who contracts with another to have work performed consisting of the removal, excavation or drilling of … minerals[.]" 77 P.S. § 461.

In ***Delich v. Workmen's Comp. Appeal Board***, 661 A.2d 936 (Pa. Cmwlth. 1995), the Commonwealth Court considered the differences between Section 302(a) and Section 302(b). Although we are not bound by the Commonwealth Court's holdings, we are persuaded by its analysis in ***Delich***.[7] The Court noted that while Section 302(a) does not include a

---

[7] In ***Delich***, the Commonwealth Court considered the claim of a timber worker who was injured by jumping off a piece of logging equipment after being swarmed by hornets. ***Delich***, 661 A.2d at 936-37. The workers' compensation referee awarded benefits to Delich, to be paid by the timber contractor as a statutory employer under Section 302(a). ***See id.*** at 937; ***see also*** 77 P.S. § 461 (for the purposes of Section 302(a) of the Act, a contractor includes one who "contracts with another to have work performed consisting of … the cutting or removal of timber from lands"). However, the Workmen's Compensation Appeal Board reversed the decision, based on a finding that the contractor did not occupy or control the premises. ***Delich***, 661 A.2d at 937 (citing ***Wright Demolition & Excavating Co. v. Workmen's Comp. Appeal Bd.***, 434 A.2d 232, 234 (Pa. Cmwlth. 1981), which held that an employer will not be held liable for workers'

- 9 -

requirement that the contractor occupy or control the premises, Section 302(b) specifically includes such a requirement.  *Delich*, 661 A.2d at 938.

More recently, in *Six L's Packing*, the Pennsylvania Supreme Court considered another specialized definition of contractor under Section 302(a), specifically, "a person who contracts with another … to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person."  44 A.3d at 1150 (citing 77 P.S. § 461). The Supreme Court declined to limit *Delich's* holding to scenarios involving the movement of soil, rocks, minerals and timber, and reiterated that "Section 302(a), by its terms, is not limited to injuries occurring on premises occupied or controlled by the putative statutory employer."  *Six L's Packing*, 44 A.3d at 1157.

Thus, because the legislature created two distinct sections, each with its own requirements, we may not impute the requirements of one section onto the other.  *See Delich*, 661 A.2d at 938-39 (stating that "where, as here, the legislature includes specific language in one section of a statute [] and excludes it from another [], it should not be implied where excluded.");

---

compensation benefits unless the employer occupied or controlled the premises where the injury occurred).  Ultimately, the Commonwealth Court held that the timber contractor was liable as a statutory employer, regardless of whether it occupied or controlled the premises where the worker was injured.  *Id.* at 939.  The Court distinguished *Wright* on the basis that the factual circumstances of *Wright* did not implicate the specialized definition of contractor found in Section 302(a), and the referee had concluded that the contractor was a statutory employer under both Sections 302(a) and 302(b).  *Delich*, 661 A.2d at 938.

- 10 -

*see also id.* at 938 (stating that "[i]n determining legislative intent, sections of a statute must be read together and construed with reference to the entire statute."). Moreover, "[t]o require the imposition of an additional requirement incident to Section 302(b) [] would not only ignore the clear and unambiguous language of Section 302(a) of the Act, [] but also render it meaningless." *Id.* at 939; *see also* 1 Pa.C.S.A. §§ 1921(b) (providing that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"), 1922(2) (stating the presumption "that the General Assembly intends the entire statute to be effective and certain").

Despite the differences between the two sections providing for statutory employer status, the Doman Estate urges us to apply the factors set forth in *McDonald* to the Section 302(a) statutory employer provision, and asks us to find that Atlas is not Doman's statutory employer because Atlas, as a lessee, stood in the position of the property owner, and therefore, is not immune from suit. However, the Supreme Court has held that "neither the *McDonald* test, nor a *per se* owner exclusion, applies under Section 302(a) of the [Act]."[8] *Six L's Packing*, 44 A.3d at 1159; *see also*

---

[8] The *McDonald* test arose out of Section 203, and is more aptly applied in considering statutory employer status under Section 302(b), because both require that the employer occupy or control the worksite. *See McDonald*, 153 A. 424 (discussing the definition of "contractor" under Section 203, and setting forth the requirements for statutory employer status); *see also Six L's Packing*, 44 A.3d at 1152 (stating that "the *McDonald* test also had been extended from the Section 203 setting into the Section 302(b)

- 11 -

*id.* at 1159 n.12 (stating that "since the relevant statutes employ differing conceptions of 'contractor' and 'subcontractor,' we do not believe that direct comparisons between **McDonald** and Section 302(a) serve a useful purpose. Rather, Section 302(a) is best interpreted … according to its own terms.").

Here, based upon the plain language of the statute, we conclude that the trial court correctly applied Section 302(a) to determine that Atlas is Doman's statutory employer. **See** Trial Court Opinion, 12/30/15, at 6-7. Because Doman was employed by Yost to perform work involving the "removal, excavation or drilling of … minerals" (natural gas), the facts of this case implicate the specialized definition found in Section 302(a). Atlas, as the primary contractor that subcontracted the drilling process at the Springer Well, is Doman's statutory employer as a matter of law.[9] **See** 77 P.S. § 461. Consequently, Atlas is entitled to tort immunity, pursuant to Section 203, regardless of the fact that Yost already had paid Doman's worker's compensation benefits. **See Patton**, 89 A.3d at 645 (holding that "[the Supreme] Court has previously determined that this immunity pertains

---

context."); **Vandervort v. Workmen's Comp. Appeal Bd.**, 899 A.2d 414, 419 (Pa. Cmwlth. 2006) (stating that "[t]he **McDonald** test has been utilized over the years to determine whether an entity is a statutory employer under both the tort immunity section (203) and the insurer section (302(b)).").  However, the **McDonald** test is not applicable to Section 302(a).

[9] Accordingly, had Yost, as Doman's direct employer, been unable to pay Doman's workers' compensation benefits, Atlas would have been compelled to pay.  We note that even if Atlas had been required to pay Doman's workers' compensation benefits, the beneficiaries of the Doman Estate would not have received those benefits, as his benefits were directed to his dependent child.

by virtue of statutory[] employer status alone, such that it is accorded even where the statutory employer has not been required to make any actual benefit payments."); **see also Fonner v. Shandon, Inc.**, 724 A.2d 903, 906-08 (Pa. 1999) (stating that the 1974 amendments to the Act did not change a statutory employer's entitlement to tort immunity even if the direct employer paid benefits for a worker's injuries under the Act).  Based upon the foregoing, we are constrained by the terms of the Act and the relevant case law to affirm the trial court's Order granting summary judgment in favor of Atlas.

However, we note that there have been prior calls to the legislature to reconsider Pennsylvania's statutory scheme.  **See Patton**, 89 A.3d at 650 (Baer, J., concurring) (urging the legislature "to eliminate the doctrine, so that it no longer serves as blanket immunity for general contractors, thwarting a victim's right to recover from a tortfeasor"); **see also Fonner**, 724 A.2d at 908 (Nigro, J., dissenting) (stating that "[c]ommon sense and logic dictate that the general contractor should not reap the benefits of civil liability unless it undertakes responsibility of compensation coverage.").  We echo those calls and agree that, following the 1974 amendments to the Act, the statutory employer doctrine no longer serves the remedial purpose of the Act.  Traditionally, the secondary liability imposed on statutory employers was meant to ensure that an injured worker will be afforded payment of benefits, even in the event of default by his primary employer.

*See Patton*, 89 A.3d at 645; *see also Six L's Packing*, 44 A.3d at 1158-59 (stating that "the Legislature meant to require persons (including entities) contracting with others … to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payment upon a default."). The tort immunity associated with the imposition of secondary liability "reflects the historical *quid pro quo* between an employer and employee whereby the employer assumes liability without fault for a work-related injury…." *Tooey v. AK Steel Corp.*, 81 A.3d 851, 860 (Pa. 2013) (citation omitted). However, the Act was amended in 1974 to require that all employers provide workers' compensation coverage. *See Fonner*, 724 A.2d at 905 (noting that, prior to 1974, the Act contained "elective compensation" language). Notwithstanding, the 1974 amendments allowed general contractors to remain insulated from tort liability, despite never being required to provide workers' compensation benefits to injured employees of subcontractors, and created a windfall immunity shield. Thus, "the mandatory nature of workers' compensation has rendered the statutory employer doctrine obsolete[,] … [and] adversely impact[s] worker safety by eliminating the traditional consequences (money damages) when a general contractor's negligence harms a subcontractor's employee." *See Patton*, 89 A.3d at 650-51 (Baer, J., concurring); *see also Travaglia v. C.H. Schwertner & Son, Inc.*, 570 A.2d 513, 518 (Pa. Super. 1989) ("Section 203 of the [] Act, which was

designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employees may seek refuge.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2016