J-A05012-20

2020 PA Super 189

| ERIC DOBRANSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY AND | : | No. 900 WDA 2019 |
| HALLIBURTON ENERGY SERVICES, | : | |
| INC. | : | |

Appeal from the Judgment Entered May 22, 2019
In the Court of Common Pleas of Greene County Civil Division at No(s):
AD 142-2014

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

OPINION BY BENDER, P.J.E.:                    FILED AUGUST 11, 2020

Appellant, Eric Dobransky, appeals from the trial court's May 22, 2019 order granting summary judgment in favor of Appellees, EQT Production Company and Halliburton Energy Services, Inc.  We vacate the trial court's order and remand.

The trial court provided the following background:

[Mr.] Dobransky seeks liability against [Appellees] for injuries he alleges he sustained from his exposure to barite on June 19, 2012, at the Scotts Run well site.  Barite is a weighing agent to increase densities of industrial drilling fluids.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Barite is one of several components used to make "drilling mud."  See Appellees' Brief at 7 ("When a company drills a natural-gas well, it uses a substance called 'drilling mud' to keep the bore[]hole 'open and stable' and to

> [Mr. Dobransky] was employed as a truck driver by Northwest Concrete Products, Inc., d.b.a. Northwest Logistics.  In that capacity, [Mr. Dobransky] was delivering a truckload of barite to the EQT Production Company[-]owned well site in Greene County and was depositing the truckload of barite into barite storage tanks placed, owned, and/or maintained by Halliburton Energy Services, Inc.
>
> [Mr. Dobransky] alleges that, because of [Appellees'] failure to operate the well site in a safe manner, he was exposed to barite when the cap of a storage tank blew off releasing barite into his face and onto his person.  Among other deficiencies, [Mr. Dobransky] alleges the tank was missing a ball valve and pressure gauge.
>
> [Appellees] filed [a] [m]otion for [s]ummary [j]udgment[,] arguing that they were [Mr.] Dobransky's statutory employers [under Section 302(a) of the Workers' Compensation Act ("the Act"), codified at 77 P.S. § 461,] and, as such, are immune from tort liability.

Trial Court Opinion (TCO), 5/22/19, at 2-3.

The trial court granted Appellees' motion for summary judgment based on the statutory employer defense.[2]  Mr. Dobransky subsequently filed a timely notice of appeal.  The trial court then directed Mr. Dobransky to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied.

_____

carry material out of the bore[]hole while drilling is occurring.  Barite is a necessary ingredient of drilling mud in that it is a weighting material that helps the mud 'push back against' the rock formation through which the bore[]hole is being drilled.") (footnotes omitted); Mr. Dobransky's Brief at 7 (noting that barite "is one of several components of the 'mud,'" and that the other components are "water, grounded clay, polymer, filtration control agent, and alkalinity control agents") (citation omitted).

[2] In the trial court's opinion and order granting Appellees' motion for summary judgment, the trial court did not address any of the alternative grounds for summary judgment raised by Appellees in their motion.

Presently, Mr. Dobransky raises a single issue for our review:

> Is a person who merely drives a truck to deliver a single raw material to a well site nevertheless within the specialized definition of statutory employee in [Section] 302(a) of the Workers['] Compensation Act as one whose work consists of "the removal, excavation, or drilling of soil, rock, or minerals" where (1) the raw material at issue is only one of several components of a fluid that is poured into an empty bore hole to maintain the integrity of the bore and (2) the purported statutory employer neither develops the formula for the fluid, mixes the components of the fluid, nor even pours the fluid into the empty hole?

Mr. Dobransky's Brief at 3 (unnecessary emphasis omitted).

We apply the following standard of review to an order granting a motion

for summary judgment:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Doman v. Atlas America, Inc., 150 A.3d 103, 105 (Pa. Super. 2016)

(citation omitted).

In granting summary judgment to Appellees, the trial court wholly relied

on Doman, which it found to be "on-point both legally and factually." TCO at

3. The Doman Court summarized the facts before it as follows:

> In September 2006, Atlas entered into an oil and gas lease with Frieda Springer ("Springer"), for the purpose of drilling, operating, producing, and removing oil and gas from her property in Greene County. Atlas subsequently entered into a Drilling Bid Proposal and Footage Drilling Contract ("Footage Drilling Contract") with

Gene D. Yost & Son, Inc. ("Yost"), a drilling contractor, to drill multiple wells in Fayette County and Greene County, including Well No. 13 on Springer's property ("the Springer Well").[2] Under the terms of the Footage Drilling Contract, Yost was required to provide the necessary equipment and labor, and to drill the wells to the contract footage depth, as specified by Atlas.

> [2] The Springer Well is a shallow, low-pressure vertical well drilled into the Upper Devonian Shale formation. Such wells commonly involve footage contracts with well-drilling companies, whereby the oil and gas lessee pays the drilling company a per-foot rate to drill to a specified depth, referred to as the contract footage depth. When drilling is complete, the contracted drilling company is required to remove the drilling pipe, "shut in" the well, and remove the drilling equipment so the lessee can move into the production stage.

Yost began drilling at the Springer Well site in November 2007, and the well reached the contract footage depth on December 2, 2007. Yost personnel worked overnight to remove the drilling pipe from the Springer Well and "shut in" the well, leaving the gas in the well bore. The Tulsa Valve, which is situated on top of the well head and is used to contain the gas within the well, was closed at this time. Rock A. Doman ("Doman") and another Yost employee began removing the blow-out preventer flange, which was attached to the Tulsa Valve, from beneath the rig platform. While the men unscrewed the flange from the Tulsa Valve assembly, they inadvertently loosened the pressurized piping below the Tulsa Valve. The Tulsa Valve and the blow-out preventer flange detached from the well head and struck Doman. Doman was thrown approximately 60 feet above ground level before landing about 30 to 40 feet from the well rig, and was fatally injured.

Yost paid workers' compensation benefits to Doman's fiancé, for the benefit of her minor child.

Id. at 104 (footnote omitted).

Doman's estate subsequently initiated a wrongful death and survival action against Atlas, asserting, inter alia, various theories of negligence. Id. at 105. Atlas filed a motion for summary judgment, alleging that it qualified

as a statutory employer under Section 302(a) of the Act and, therefore, was immune from tort liability. Id. The trial court granted summary judgment in favor of Atlas, and the estate appealed. Id.

On appeal, this Court noted that "[a] contractor may be deemed a statutory employer if the requirements of … Section 302(a) … have been satisfied." Id. at 106 (citations omitted). It recognized that Section 302(a) provides:

> § 461. Coverage of employees of subcontractor; subcontractor defined; exception.
>
> A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.
>
> For purposes of this subsection, a person who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or (ii) the cutting or removal of timber from lands, or (2) to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor. This subsection shall not apply, however, to an owner or lessee of land principally used for agriculture who is not a covered employer under this act who contracts for the removal of timber from such land.

Id. (quoting 77 P.S. § 461; emphasis in opinion).[3]  This Court then observed

that statutory employers enjoy immunity from tort liability, and acknowledged

that "Section 302(a) does not require the primary contractor to occupy or

control a worksite in order to be deemed the statutory employer of the

subcontractor's employees."  Id. at 107 (citation omitted).  It then discerned:

> [B]ased upon the plain language of the statute, we conclude that
> the trial court correctly applied Section 302(a) to determine that
> Atlas is Doman's statutory employer.  Because Doman was
> employed by Yost to perform work involving the "removal,
> excavation or drilling of … minerals" (natural gas), the facts of this
> case implicate the specialized definition found in Section 302(a).
> Atlas, as the primary contractor that subcontracted the drilling
> process at the Springer Well, is Doman's statutory employer as a
> matter of law.  Consequently, Atlas is entitled to tort immunity,
> pursuant to Section 203 [of the Act, codified at 77 P.S. § 52],
> regardless of the fact that Yost already had paid Doman's worker's
> compensation benefits.  See Patton v. Worthington
> Associates, Inc., … 89 A.3d 643, 645 ([Pa.] 2014) (holding that
> "[the Supreme] Court has previously determined that this
> immunity pertains by virtue of statutory[ ] employer status alone,
> such that it is accorded even where the statutory employer has
> not been required to make any actual benefit payments[]"); see
> also Fonner v. Shandon, Inc., … 724 A.2d 903, 906-08 ([Pa.]
> 1999) (stating that the 1974 amendments to the Act did not

_____

[3] The Doman Court noted that our Supreme Court has held that "neither the McDonald[ v. Levinson Steel Co., 153 A. 424 (Pa. 1930)] test, nor a per se owner exclusion applies under Section 302(a)…."  Doman, 150 A.3d at 108 (quoting Six L's Packing Co. v. Workmen's Comp. Appeal Bd., 44 A.3d 1148, 1159 (Pa. 2012)); see also id. at 105 n.5 ("In McDonald, the Supreme Court set forth the following five elements necessary to create the statutory employer relationship: '(1) an employer who is under contract with an owner or one in the position of an owner[;] (2) premises occupied by or under the control of such employer[;] (3) a subcontract made by such employer[;] (4) part of the employer's regular business [e]ntrusted to such subcontractor[;] [and] (5) an employee of such subcontractor.'") (quoting McDonald, 153 A. at 426).

change a statutory employer's entitlement to tort immunity even if the direct employer paid benefits for a worker's injuries under the Act). Based upon the foregoing, we are constrained by the terms of the Act and the relevant case law to affirm the trial court's [o]rder granting summary judgment in favor of Atlas.

Id. at 109 (footnote and some internal citations omitted).[4]

_____

[4] Despite granting summary judgment in favor of Atlas, the Doman Court went on to voice its dissatisfaction with the result it was constrained to reach, conveying:

[T]here have been prior calls to the legislature to reconsider Pennsylvania's statutory scheme. See Patton, 89 A.3d at 650 (Baer, J., concurring) (urging the legislature "to eliminate the doctrine, so that it no longer serves as blanket immunity for general contractors, thwarting a victim's right to recover from a tortfeasor"); see also Fonner, 724 A.2d at 908 (Nigro, J., dissenting) (stating that "[c]ommon sense and logic dictate that the general contractor should not reap the benefits of civil liability [immunity] unless it undertakes responsibility of compensation coverage[]"). We echo those calls and agree that, following the 1974 amendments to the Act, the statutory employer doctrine no longer serves the remedial purpose of the Act. Traditionally, the secondary liability imposed on statutory employers was meant to ensure that an injured worker will be afforded payment of benefits, even in the event of default by his primary employer. See Patton, 89 A.3d at 645; see also Six L's Packing, 44 A.3d at 1158-59 (stating that "the Legislature meant to require persons (including entities) contracting with others ... to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payment upon a default[]"). The tort immunity associated with the imposition of secondary liability "reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury...." Tooey v. AK Steel Corp., ... 81 A.3d 851, 860 ([Pa.] 2013) (citation omitted). However, the Act was amended in 1974 to require that all employers provide workers' compensation coverage. See Fonner, 724 A.2d at 905 (noting that, prior to 1974, the Act contained "elective compensation" language). Notwithstanding, the 1974 amendments allowed general

Turning to the case sub judice, the trial court — relying on Doman — reasoned:

> [Mr.] Dobransky initially requests this [c]ourt to find that he was not involved in work related to the "removal, excavation or drilling of … minerals." The [c]ourt cannot find as such, instead finding that [Mr.] Dobransky's work was pursuant to a contract to have work performed consisting of the removal, excavation or drilling of minerals. 77 P.S. § 461.
>
> Halliburton worked on the EQT well[]site pursuant to a master services agreement which contracted Halliburton to perform tasks including drilling. Northwest Logistics was contracted through Halliburton to provide transportation services. Under the above[-]recited Doman analysis, Section 302(a) applies. Halliburton is accordingly [Mr. Dobransky's] statutory employer.
>
> Vertical privity extends the statutory employer immunity to EQT since EQT had a contract with Halliburton and Halliburton had subcontracted services to Northwest Logistics, the direct employer of Dobransky.

TCO at 6.

_____

> contractors to remain insulated from tort liability, despite never being required to provide workers' compensation benefits to injured employees of subcontractors, and created a windfall immunity shield. Thus, "the mandatory nature of workers' compensation has rendered the statutory employer doctrine obsolete[,] … [and] adversely impact[s] worker safety by eliminating the traditional consequences (money damages) when a general contractor's negligence harms a subcontractor's employee." See Patton, 89 A.3d at 650-51 (Baer, J., concurring); see also Travaglia v. C.H. Schwertner & Son, Inc., … 570 A.2d 513, 518 ([Pa. Super.] 1989) ("Section 203 of the [ ] Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employe[r]s may seek refuge.").

Doman, 150 A.3d at 109-10 (some brackets added).

On appeal, Mr. Dobransky argues that "[a] person who merely drives a truck to deliver a single raw material to a well site is not a person whose work consists of 'the removal, excavation, or drilling of soil, rock, or minerals' within [Section] 302(a) of the ... Act." Mr. Dobransky's Brief at 10 (emphasis omitted). He contends that Doman is distinguishable, as "[t]here was never any question that the Yost employee ... who died in the explosion at the Atlas drill site was involved in work that consisted of 'drilling,' and thus was a statutory employee of Atlas. This is because Atlas engaged Yost to drill wells, and [Doman] was a Yost employee who died during the final stages of the actual drilling process." Id. at 12. Therefore, he asserts that Doman "is no basis per se for the trial court to have held that [the mere delivery of] one of several raw materials that are combined at a natural gas well to create a fluid that is thereafter poured down an empty bore hole to maintain the integrity of the bore constitutes the actual 'removal' of natural gas, 'excavation' of natural gas, or 'drilling' of natural gas." Id. at 11.

> In response, Appellees maintain that,
>
> Mr. Dobransky was involved in transporting and loading a product into tanks at the well[]site that was contemporaneously used in the 'removal, excavation, or drilling' for natural gas.[5] [Halliburton] worked on the EQT well[]site pursuant to a master

_____

[5] On the day in question, Appellees state that Mr. Dobransky, after filling the first barite tank without incident, "alleged that, on request from a [Halliburton] employee, he waited approximately a half hour to fill the second tank so that the drilling team could contemporaneously use the barite he had just provided." Appellees' Brief at 10 (footnote omitted). Mr. Dobransky avers that he sustained his injuries while filling the second tank. Id. at 11; Mr. Dobransky's Brief at 8.

services agreement between the two companies by which [Halliburton] performed a variety of tasks related to, among other things, drilling and removal of natural gas. [Halliburton] contracts with Mr. Dobransky's employer, Northwest [Logistics], for transportation and product-unloading services generally, and that contract included the work Mr. Dobransky was performing when he was injured. Accordingly, [Halliburton] was "[a] contractor who subcontract[ed] all or part of a contract" to Mr. Dobransky's employer. Thus, under Doman, Section 302(a) applies.

Appellees' Brief at 18-19 (footnotes omitted).

Looking at the relevant language of Section 302(a), we determine that the trial court erred in granting summary judgment in favor of Appellees on this basis. Section 302(a) sets forth that "a person who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals … shall be deemed a contractor, and such other person a subcontractor." 77 P.S. § 461. Halliburton did not contract with Northwest Logistics to have work performed consisting of the removal, excavation or drilling of soil, rock or minerals; instead, Appellees themselves state that "[Halliburton] contract[ed] with Mr. Dobransky's employer, Northwest [Logistics], for transportation and product-unloading services generally…." Appellees' Brief at 19 (emphasis added; footnote omitted); see also id. at 6 ("One of [Halliburton's] contractual responsibilities was to deliver and load a substance known as barite at the well[]site. [Halliburton] in turn subcontracted those delivery and unloading duties to Northwest [Logistics] pursuant to an agreement between the two companies.") (footnotes omitted); TCO at 6 ("Northwest Logistics was contracted through Halliburton to provide transportation services."). Thus, Northwest Logistics did not remove,

excavate, or drill for minerals, but simply transported and unloaded materials to the site. Its work did not include removing, excavating, or drilling. Accordingly, we agree with Mr. Dobransky that the trial court's decision is "an unnecessary expansion of a compensation scheme that has been repeatedly ridiculed as obsolete in light of subsequent changes to other sections of the Workers['] Compensation Act." Mr. Dobransky's Brief at 13 (emphasis in original). Thus, we vacate the trial court's order granting summary judgment in favor of Appellees based on Section 302(a) and Doman, and remand.[6]

Order vacated. Case remanded. The Prothonotary of this Court is hereby ordered to return the record to the trial court. Jurisdiction relinquished.

Judge Pellegrini joins this opinion.

Judge Bowes files a dissenting opinion.

_____

[6] Appellees devote a substantial portion of their brief to arguing various alternative grounds for the entry of summary judgment in their favor, urging us to affirm the trial court's order on one of these other grounds. However, the trial court did not address any of these arguments below in its opinion, and we decline to do so in the first instance. See Branton v. Nicholas Meat, LLC, 159 A.3d 540, 562 n.21 (Pa. Super. 2017) (observing that the trial court did not address an issue in its opinion granting summary judgment and therefore remanding the matter so that the trial court could rule on the issue in the first instance).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020