J-A05012-20

2020 PA Super 189

ERIC DOBRANSKY : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
EQT PRODUCTION COMPANY AND : No. 900 WDA 2019
HALLIBURTON ENERGY SERVICES, :
INC. :

Appeal from the Judgment Entered May 22, 2019
In the Court of Common Pleas of Greene County Civil Division at No(s):
AD 142-2014

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

DISSENTING OPINION BY BOWES, J.:            FILED AUGUST 11, 2020

I respectfully dissent. I find no substantive fault in the learned

Majority's apt analysis of the applicability of Section 302(a)(1) of the

Pennsylvania Worker's Compensation Act ("WCA"), and discussion of Doman

v. Atlas America, Inc., 150 A.3d 103 (Pa.Super. 2016). However, I believe

that we must affirm the entry of summary judgment in favor of EQT Production

Company ("EQT") and Halliburton Energy Services, Inc. ("HESI") (collectively,

"Appellees")[1] on alternative grounds that were properly raised and argued in

the trial court.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  The trial court found that EQT was in vertical privity with HESI for the
purposes of the statutory employer defense. See Trial Court Opinion,
5/22/19, at 6. Mr. Dobransky has not challenged this aspect of the trial court's
holding. Accordingly, I discuss and address Appellees collectively.

The Majority notes only that it will not address any of the "alternative grounds" for affirmance discussed in Appellees' brief. See Majority Op. at 11 n.6. Specifically, it declines to engage with these arguments because the trial court entered summary judgment solely on the basis of Section 302(a4)(1) and Doman. See Trial Court Opinion, 5/22/19, at 5-7. Therefore, the trial court never addressed any other arguments advanced by the parties.

My concern arises under Section 302(a)(2) of the WCA, which provides that "[a] contractor who subcontracts all or any part of a contract" shall be deemed the statutory employer of any subcontractor if the underlying contract is "to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade" of the contractor. 77 P.S. § 461(2). Our Supreme Court has held that Section 302(a)(2) may confer statutory employer status upon contractors in a wide range of circumstances:

> [T]he statute extends to any scenario in which a "contractor . . . subcontracts all or any part of a contract," within the scope of the work delineated in Section 302(a)'s specialized definition of "contractor" (including work of a kind which is a 'regular or recurrent part of the business' of the putative statutory employer).

Six L's Packing Co. v. W.C.A.B., 44 A.3d 1148, 1157 (Pa. 2012) (emphasis added) (citing 77 P.S. § 461).

Appellees explicitly raised and argued the applicability of Section 302(a)(2) before the trial court on multiple occasions.[2] Appellees also

_____

[2] Appellees' July 2, 2018 motion for summary judgment asserted arguments under Section 302)(a)(1). See Motion for Summary Judgment, 7/2/18, at ¶¶

- 2 -

addressed this issue in their brief to this Court, arguing persuasively that Section 302(a)(2) should apply:

> [T]he uncontested evidence established that [Appellees] regularly and recurrently required that barite by delivered and unloaded at natural-gas well sites and that [Appellees] subcontracted that responsibility to Northwest. Accordingly, in the language of Section 302(a)[(2)], [Appellees are statutory employers] with respect to Mr. Dobransky because [they] contracted Northwest, Mr. Dobransky's [primary] employer, to "have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of" [Appellees].

Appellees' Brief at 22.

Mr. Dobransky has not responded to these arguments in his submissions to this Court, but he fully recognized and responded to these arguments in the trial court. Specifically, he asserted that the lack of similarity between the respective businesses of Northwest and Appellees were dispositive as to the

_____

29-43 (citing Doman, supra at 105). However, the trial court's August 29, 2018 order permitted Appellees to submit further arguments concerning the statutory employer defense, and directed briefing on the matter. See Order, 8/29/18. Thereafter, Appellees properly raised the applicability of Section 302(a)(2) in the filings contemplated by the trial court's briefing schedule. See Brief in Support of Summary Judgment, 9/17/18, at 14 ("Mr. Dobransky and other witnesses testified without dispute that transportation and use of barite are regular and recurrent parts of [Appellees'] business in providing drilling mud such as it did at the Scott's Run site."); Reply Brief in Support of Summary Judgment, 10/16/18, at 4-5 ("[Appellees] contracted with Mr. Dobransky's employer, [Northwest], for [Northwest] to transport and unload barite, and the transportation and unloading of barite at the well site are part of [Appellees'] regular and recurrent business. Under Section 302(a)(2), [Appellees were] Mr. Dobransky's statutory employer.").

applicability of Section 302(a)(2), essentially mirroring his arguments with respect to Section 302(a)(1): "Mr. Dobransky's employment and that of [Northwest] are clearly not the same as [Appellees] and therefore when Mr. Dobransky was injured he was not performing work 'of a kind which is a regular or recurrent part of the business . . .' of [Appellees]."[3] Brief in Opposition to Summary Judgment, 8/1/18, at 23.

The certified record overwhelmingly supports Appellees' assessment. The agreement between Appellees and Northwest was open-ended, and had been ongoing for longer than a decade at the time of Mr. Dobransky's accident. See Transportation Agreement, 10/5/01, at ¶ 2. Moreover, the agreement clearly indicated that Northwest would be providing specific delivery services to Appellees. Id. at Exh. A (stating that the services rendered by Northwest would include "[p]ick-up and delivery of [t]ruckload shipments tendered to [Appellees]"). Additionally, Mr. Dobransky's deposition testimony confirmed that the shipments he regularly made for Appellees contained barite, and that it was typically in urgent need at Appellees' drilling sites as part of their ongoing operations. See N.T. Deposition of Mr. Dobransky, 8/25/15, at 48, 52-53. ("[W]hen they called you for barite, it was almost ASAP. You knew it

_____

[3] Mr. Dobransky also avers in this response that Northwest has already paid him compensation under the WCA. See Brief in Opposition to Summary Judgment, 8/1/18, at 24. Beyond this bare averment, there is no testamentary evidence documenting or speaking to such payments.

had to be there. . . . It doesn't matter if it's pouring or storming. When they called you, you had to really be there.").[4]

Comparing these factual circumstances to the available case law on Section 302(a)(2), I am particularly persuaded by the reasoning set forth in the Commonwealth Court's holding in Zwick v. W.C.A.B., 106 A.3d 251, 255-56 (Pa.Commw. 2014).[5] In that case, Marco Popchocoj ("Claimant") was a subcontractor who was injured while performing construction and rehabilitation work at a property for licensed realtor Mark Zwick. Zwick was determined to be the claimant's statutory employer under Section 302(a)(2).

On appeal from the Workers' Compensation Appeal Board ("WCAB"), Zwick argued that the dissimilarity between his work and the claimant's occupation should preclude the application of Section 302(a)(2). The Commonwealth Court disagreed, and offered the following rationale:

_____

[4] Other deposition testimony taken during the course of the case independently confirms both the nature of the contractual relationship between Northwest and Appellees, as well as the exclusive and recurrent nature of that contract. See N.T. Deposition of Grant Ross, 12/4/17, at 34 (confirming that "[Northwest] provided transportation services for Halliburton, transporting and unloading things like barite and sand that Haliburton would use as part of its business activities at the well site"); see also N.T. Deposition of John Anderson, 10/11/17, at 29 ("[B]arite was a job that we had, that Northwest had. So no outside truckers would come do our barite. It was just our guys. Our 30 guys would do the barite for Halliburton.").

[5] See Petow v. Warehime, 996 A.2d 1083, 1089 (Pa.Super. 2010) ("This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate.").

> Zwick asserts that Section 302(a) is inapplicable because he is a licensed realtor, so the work Claimant performed at the time of his injury was not a regular part of Zwick's business. The record belies this claim. Zwick testified that construction rehabilitation work was a part of his business. Zwick further testified that he hired [Claimant's employer] to do construction work at the [p]roperty to prepare it for resale and that Zwick was 'essentially' the general contractor on the job. Zwick also testified that [Claimant's employer] had previously done construction work for him at another property. . . . The credited evidence supports the WCAB's conclusion that Zwick was in the business of rehabilitating properties for resale and that he hired [Claimant's employer] to perform work that was a regular part of his business. Therefore, Zwick met the definition of a "contractor" under Section 302(a) of the Act.

Zwick, supra at 255. Overall, I read Zwick for the proposition that the lack of similarity between the parties' respective businesses is not dispositive, or even particularly relevant, under Section 302(a)(2).

Here, Mr. Dobransky asserted that Section 302(a)(2) should not apply merely because Northwest was not engaged in the same line of work as Appellees. See Brief in Opposition to Summary Judgment, 8/1/18, at 23. This is the same line of argument that the Commonwealth Court discredited in Zwick, and I would similarly reject it in this case. Like my colleagues on the Commonwealth Court, I do not find this argument compelling or persuasive. Initially, I note that the text of Section 302(a)(2) contains no requirement of similarity between the overall activities of the contractor and the subcontractor to trigger its application. See 77 P.S. § 461. More importantly and like in Zwick, the certified record in this case speaks definitively regarding the recurrent and regular nature of the contractual relationship between

Northwest and Appellees. As detailed in the factual discussion reproduced above, Mr. Dobransky's shipments of barite were a critical and common part of Appellees' drilling operations.

Based on the foregoing discussion, I believe that Appellees' legal status as a statutory employer under Section 302(a)(2) is quite clear under these circumstances. See Six L's, supra at 1158-59 ("[W]e find it to be plain enough that the Legislature meant to require persons (including entities) contracting with others to perform work which is a regular or recurrent part of their business to assure that the employees of those others are covered by workers' compensation insurance . . . ."). Thus, I would affirm the trial court's order awarding summary judgment to Appellees pursuant to the statutory employer defense under Section 302(a)(2).[6] Accord Zwick, supra at 255.

_____

[6] It is well-established that we may affirm the trial court's decision on any correct basis, even in the context of summary judgment. See Branton v. Nicholas Meat, LLC, 159 A.3d 540, 562 n.21 (Pa.Super. 2017); see also Hassel v. Franzi, 207 A.3d 939, 957 n.6 (Pa.Super. 2019) (noting the "well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record"). However, this Court "cannot affirm a trial court's grant of summary judgment upon an argument that was never raised in support of the summary judgment motion." Shamis v. Moon, 81 A.3d 962, 970 (Pa.Super. 2013) (citing Yount v. Pa. Dep't of Corr., 966 A.2d 1115, 1119 (Pa. 2009)).

Critically, Appellees' arguments arising under Section 302(a)(2) were properly advanced in support of summary judgment. Accordingly, Mr. Dobransky had an obligation to respond and establish the existence of a genuine and material issue of fact. See Finder v. Crawford, 167 A.3d 40, 44 (Pa.Super. 2017) ("Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes

I respectfully dissent.

_____

the entitlement of the moving party to judgment as a matter of law."). My review leads me to conclude that no such outstanding factual issue exists.